IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-45

 Filed: 7 August 2018

Onslow County, Nos. 01 CRS 2993–95

STATE OF NORTH CAROLINA

 v.

ANTWAUN SIMS

 Appeal by defendant from order entered 21 March 2014 by Judge Jack W.

Jenkins in Onslow County Superior Court. Heard in the Court of Appeals 17 October

2017.

 Attorney General Joshua H. Stein, by Assistant Attorney General Kimberly N.
 Callahan, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender David W.
 Andrews, for defendant-appellant.

 BRYANT, Judge.

 Where the trial court complied with the statutory requirements in determining

that life imprisonment without parole was warranted for defendant, we hold the

sentence is not in violation of the Eighth Amendment. Where the trial court properly

made ultimate findings of fact on each of the Miller factors as set forth in section 15A-

1340.19B(c), we hold that the trial court did not abuse its discretion in weighing those

factors and concluding that life imprisonment without parole was appropriate in

defendant’s case.
 STATE V. SIMS

 Opinion of the Court

 In the instant case, the trial court incorporated the facts as articulated by this

Court in State v. Sims, 161 N.C. App. 183, 184–189, 588 S.E.2d 55, 57–60 (2003), into

its order from which defendant appeals.1 The facts are as follows:

 [D]efendant [Antwaun Sims, who was seventeen at the
 time of the offense,] was with Chad Williams . . . and Chris
 Bell . . . in Newton Grove, North Carolina on 3 January
 2000, when Bell said that the group needed to rob someone
 to get a car so Bell could leave the state to avoid a probation
 violation hearing. Defendant agreed to assist Bell.
 Defendant, Bell, and Williams observed Elleze Kennedy
 (Ms. Kennedy), an eighty-nine-year old woman, leaving the
 Hardee’s restaurant . . . around 7:00 p.m. Ms. Kennedy got
 into her Cadillac and drove to her home a few blocks away.
 Defendant, Bell, and Williams ran after Ms. Kennedy’s car
 . . . until they reached [her] home. Bell approached Ms.
 Kennedy in her driveway with a BB pistol and demanded
 Ms. Kennedy’s keys. Ms. Kennedy began yelling and Bell
 hit her in the face with the pistol, knocking her to the
 ground. Bell told defendant and Williams to help him find
 the keys to Ms. Kennedy’s Cadillac. After rifling through
 Ms. Kennedy’s pockets, Williams found the keys on the
 carport and handed them to defendant who agreed to drive.
 Bell told defendant and Williams to move Ms.
 Kennedy to the back seat of the Cadillac. . . . Ms. Kennedy
 kept asking Bell where he was taking her. Bell responded
 by telling her to shut up and striking her in the face several
 times with the pistol. . . .
 After driving, . . . defendant, Bell, and Williams put
 Ms. Kennedy, who was unconscious at the time, in the
 trunk of the Cadillac. . . .

 ....

 [Later], Williams told defendant and Bell that he
 was not going to travel in a stolen car to Florida with an

 1 This Court has previously summarized the facts of this case for defendant’s direct appeal in
State v. Sims, 161 N.C. App. 183, 184–189, 588 S.E.2d 55, 57–60 (2003).

 -2-
 STATE V. SIMS

 Opinion of the Court

abducted woman in the trunk. . . .

....

Williams asked if they could let her go, but Bell replied,
“Man, I ain’t trying to leave no witnesses. This lady done
seen my face. I ain’t trying to leave no witnesses.” Bell
asked defendant for a lighter to burn Bell’s blood-covered
jacket. Defendant gave Bell his lighter and Bell set the
jacket on fire and threw it into the Cadillac. Bell stayed to
watch the fire, but defendant and Williams walked . . . to
defendant’s brother’s house to watch television. . . . The
next morning Bell told defendant to go back to the car and
confirm that Ms. Kennedy was dead, and that if she was
not, defendant should finish burning the Cadillac.
Defendant returned and told Bell and Williams that Ms.
Kennedy was dead and that all of the windows in the
Cadillac were smoked. . . .

....

 Ms. Kennedy’s Cadillac was found by law
enforcement the morning after her abduction.
Investigators discovered Ms. Kennedy’s body in the trunk.
They made castings of footprints found in the area of the
abandoned Cadillac. The castings were later compared to,
and matched, shoes taken from defendant. . . .
Investigators recovered a red cloth from the backseat
floorboard, which was later identified as the one defendant
had used to wipe down the backseat of the Cadillac. Tests
of the cloth showed traces of defendant's semen and Ms.
Kennedy's blood. Police found two hairs in the backseat
area of the Cadillac, one of which was later determined to
be defendant's and the other Bell's. Police also matched
latent fingerprints found on the Cadillac with prints taken
from defendant and Bell.

....

 Forensic pathologist Dr. Falpy Carl Barr (Dr. Barr)

 -3-
 STATE V. SIMS

 Opinion of the Court

 testified that he conducted Ms. Kennedy’s autopsy on 5
 January 2000. . . . Dr. Barr testified that Ms. Kennedy was
 struck multiple times with a weapon, leaving marks
 consistent with a pellet gun . . . . Dr. Barr testified that
 because of the extent of the soot in her trachea and lungs
 he believed that she was alive and breathing at the time
 the fire took place in the vehicle; however, because of Ms.
 Kennedy’s elevated carbon monoxide level, Dr. Barr came
 to the conclusion that Ms. Kennedy died as a result of
 carbon monoxide poisoning from a fire in the Cadillac.
Id.

 Defendant was arrested and later indicted for first-degree murder, assault

with a deadly weapon inflicting serious injury, first-degree kidnapping, and burning

personal property. On 14 August 2001, defendant was tried capitally in the Criminal

Session of Onslow County Superior Court, the Honorable Jay Hockenbury, Judge

presiding.2 Defendant was convicted of first-degree murder, first-degree kidnapping,

and burning of personal property. At his sentencing hearing, the jury unanimously

recommended that defendant be sentenced to life imprisonment without parole, as

opposed to death, and the trial court entered judgment. Defendant appealed to this

Court, which found no error in defendant’s conviction.

 On 4 April 2013, defendant filed a motion for appropriate relief requesting a

new sentencing hearing in light of the United States Supreme Court’s decision in

 2 Defendant was tried with Bell and Williams as co-defendants. Williams entered a guilty plea
to first-degree murder, first-degree kidnapping, burning personal property, and assault with a deadly
weapon inflicting serious injury for his role in Ms. Kennedy’s death and testified at trial against
defendant and Bell. Williams and defendant were sentenced to life without parole. Bell was sentenced
to death upon the jury’s recommendation.

 -4-
 STATE V. SIMS

 Opinion of the Court

Miller v. Alabama, 567 U.S. 460, 183 L. Ed. 2d 407 (2012), which held that mandatory

life without parole for juvenile offenders violates the Eighth Amendment’s prohibition

of cruel and unusual punishment. By order entered 2 July 2013, the trial court

granted defendant’s motion for appropriate relief and ordered a rehearing pursuant

to Miller as well as our North Carolina General Assembly’s enactment of N.C. Gen.

Stat. § 15A-1340.19B, 2012 N.C. Sess. Laws 2012-148, § 1, eff. July 12, 2012 (stating

that a defendant who is less than eighteen years of age who is convicted of first-degree

murder pursuant to premeditation and deliberation shall have a hearing to determine

whether the defendant should be sentenced to life imprisonment without parole or

life imprisonment with parole).

 On 20 February 2014, the Honorable Jack Jenkins, Special Superior Court

Judge, conducted a hearing and ordered that “defendant’s sentence is to remain life

without parole.” Defendant appealed. On 28 September 2016, this Court issued a

writ of certiorari for the purpose of reviewing the resentencing order.

 _________________________________________________________

 On appeal, defendant contends the trial court (I) violated his Eighth

Amendment constitutional protection against cruel and unusual punishment by

imposing a sentence of life without parole; and (II) erred by imposing a sentence of

life without parole because the trial court failed to make findings on the presence or

 -5-
 STATE V. SIMS

 Opinion of the Court

absence of Miller factors and the findings it did make do not support the conclusion

that the sentence was warranted.

 I

 Defendant first argues the trial court violated his constitutional protections

against cruel and unusual punishment by imposing a sentence of life without parole.

We disagree.

 “The standard of review for alleged violations of constitutional rights is de

novo.” State v. Graham, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009). The

prohibition of cruel and unusual punishment under the Eighth Amendment forbids

entering sentences “that are grossly disproportionate to the crime.” State v. Thomsen,

242 N.C. App. 475, 487, 776 S.E.2d 41, 49 (2015), aff'd, 369 N.C. 22, 789 S.E.2d 639

(2016) (quoting Harmelin v. Michigan, 501 U.S. 957, 959, 115 L. Ed. 2d 836 (1991).

The jurisprudence of the Eighth Amendment as it applies to juveniles recognizes that

juvenile offenders are categorically distinguishable from adult offenders because of

their “diminished culpability and greater prospects for reform.” Miller, 567 U.S. at

471, 183 L. Ed. 2d at 418. Nevertheless, courts continue to balance their interests in

enforcing suitable punishments for juveniles proportionate to the crime while also

maintaining fairness to juvenile offenders.

 Miller v. Alabama “drew a line between children whose crimes reflect[ed]

transient immaturity and those rare children whose crimes reflect[ed] irreparable

 -6-
 STATE V. SIMS

 Opinion of the Court

corruption.” Montgomery v. Louisiana, 577 U.S. ___, ____, 193 L. Ed. 2d 599, 620

(2016), (as revised Jan. 27, 2016). The United States Supreme Court ruled that

imposing a mandatory life sentence without the possibility of parole for juvenile

offenders violates the Eighth Amendment and “a judge or jury must have the

opportunity to consider mitigating circumstances.” Miller, 567 U.S. at 489, 183 L.

Ed. 2d at 430; also see id. at 476, 183 L. Ed. 2d at 422 (“Such mandatory penalties,

by their nature, preclude a sentencer from taking account of an offender's age and

the wealth of characteristics and circumstances attendant to it.”)

 In response to Miller (but prior to the U.S. Supreme Court’s decision in

Montgomery in 2016), our General Assembly enacted N.C. Gen. Stat. §§ 15A-1476 et

seq.—now codified as 15A-1340.19 et seq. Section 15A-1340.19B(a)(1) provides that

if a defendant is convicted of first-degree murder solely on the basis of the felony

murder rule, his sentence shall be life imprisonment with parole. N.C.G.S. § 15A-

1340.19B(a)(1) (2017). If a defendant is not sentenced pursuant to subsection (a)(1),

“the court shall conduct a hearing to determine whether the defendant should be

sentenced to life imprisonment without parole, as set forth in G.S. 14-17, or a lesser

sentence of life imprisonment with parole.” N.C.G.S. § 15A-1340.19B(a)(2) (2017).

Section 15A-1340.19C requires the sentencing court to consider mitigating factors in

determining whether a defendant will be sentenced to life without the possibility of

parole or life with the possibility of parole and to include in its order “findings on the

 -7-
 STATE V. SIMS

 Opinion of the Court

absence or presence of any mitigating factors . . . .” N.C.G.S. § 15A-1340.19C(a)

(2017). Therefore, the statutory scheme does not allow for mandatory sentences of

life without parole for juvenile offenders and, thus, on its face, is not in violation of

the Eighth Amendment per Miller.3

 Nevertheless, defendant contends the evidence establishes that he is not one

of the rare juveniles who is “permanent[ly] incorrigib[le]” or “irreparabl[y] corrupt[]”

and warrants a life sentence without parole as noted in Montgomery. Instead,

defendant insists that the evidence indicates that at the time of the murder, his

intellectual difficulties, developmental challenges, susceptibility to peer pressure,

and potential for rehabilitation support a sentence of life in prison with the possibility

of parole. Based on the foregoing reasons, and the analysis which follows, we overrule

defendant’s Eighth Amendment argument. We review the trial court’s balancing of

the Miller factors in Issue II.

 II

 Defendant next argues the trial court erred by imposing a sentence of life

without parole because the trial court failed to make findings on the presence or

 3 We note our Supreme Court’s recent opinion in State v. James held that “the relevant
statutory language [in N.C.G.S. § 15A-1340.19C(a)] treats life imprisonment without the possibility of
parole and life imprisonment with parole as alternative sentencing options [to be made based on
analyzing] all of the relevant facts and circumstances in light of the substantive standard enunciated
in Miller.” State v. James, ___ N.C. ___, ___, 813 S.E.2d 195, 204 (2018), aff’d, ___ N.C. App. ___, 786
S.E.2d 73 (2016), disc. review allowed, 369 N.C. 537, 796 S.E.2d 789 (2017). But see id. at ___, 813
S.E.2d at 212 (Beasley, J., dissenting) (“A presumptive sentence of life without parole for juveniles
sentenced under this statute contradicts Miller.”).

 -8-
 STATE V. SIMS

 Opinion of the Court

absence of Miller factors and the findings it did make were either contradicted by the

evidence or did not support the conclusion that the sentence was warranted.

Specifically, defendant challenges six out of the court’s nine findings of fact alleging

flawed reasoning, and further argues that the trial court failed to establish which

factors were mitigating. We disagree.

 When an order entered pursuant to N.C.G.S. § 15A-1340.19A et seq. is

appealed, this Court reviews “each challenged finding of fact to see if it is supported

by competent evidence and, if so, such findings of fact are ‘conclusive on appeal.’ ”

State v. Lovette, 233 N.C. App. 706, 717, 758 S.E.2d 399, 407 (2014). The trial court’s

weighing of mitigating factors to determine the appropriate length of the sentence is

reviewed for an abuse of discretion. State v. Antone, 240 N.C. App. 408, 410, 770

S.E.2d 128, 129 (2015). “It is not the role of an appellate court to substitute its

judgment for that of the sentencing judge.” Lovette, 233 N.C. App. at 721, 758 S.E.2d

at 410.

 Our General Statutes, section 15A-1340.19B(c) sets forth factors a defendant

may submit in consideration for a lesser sentence of life with parole. Those factors

include: “1) age at the time of offense, 2) immaturity, 3) ability to appreciate the risks

and consequences of the conduct, 4) intellectual capacity, 5) prior record, 6) mental

health, 7) familial or peer pressure exerted upon the defendant, 8) likelihood that the

defendant would benefit from rehabilitation in confinement, and 9) any other

 -9-
 STATE V. SIMS

 Opinion of the Court

mitigating factor or circumstance.” N.C.G.S. § 15A-1340.19B(c). We refer to these as

the Miller factors.

 Here, defendant argues the trial court did not establish which factors were

mitigating and imposed a sentence that was not supported by the evidence. The

State, on the other hand, asserts the trial court made evidentiary findings on the

presence or absence of Miller factors, and made explicit (or ultimate findings) on

whether it found the factors to be mitigating. The trial court’s evidentiary findings

of fact (which defendant does not challenge and are therefore binding on appeal, see

In re Schiphof, 192 N.C. App. 696, 700, 666 S.E.2d 497, 500 (2008)) are, in relevant

part, as follows:

 1. The Court finds as the facts of the murder the facts as
 stated in State v. Sims, 161 N.C. App. 183[, 588 S.E.2d 55]
 (2003).

 2. The Court finds that the murder in this case was a brutal
 murder. The Court finds instructive the trial/sentencing
 jury’s finding beyond a reasonable doubt that the murder
 was “especially heinous, atrocious, or cruel” pursuant to
 N.C.G.S. 15A-2000(e)(9). According to the trial testimony
 from Dr. Carl Barr, Ms. Kennedy had blunt force trauma
 all over her body. . . . Soot had penetrated deep into her
 lungs, meaning that she was alive when her car was set on
 fire with her in it, and she therefore died from suffocation
 from carbon monoxide poisoning.

 3. The Court finds that the defendant has not been a model
 prisoner while in prison. His prison records indicate that
 he has committed and been found responsible for well over
 20 infractions since he has been in prison.

 - 10 -
 STATE V. SIMS

 Opinion of the Court

4. The Court finds that the defendant, although expressing
remorse during the hearing, has not demonstrated remorse
based on his actions and statements. During a meeting
with a prison psychiatrist on January 20, 2009, the
defendant complained that he was in prison and should not
be. . . .

5. The Court finds that Dr. Tom Harbin testified that the
defendant knew right from wrong. Further, Dr. Harbin
testified that the defendant would have known that the
acts constituting the kidnapping [and the] murder were
clearly wrong.

6. The Court finds that Dr. Harbin testified that the
defendant was a follower, and was easily influenced. Dr.
Harbin testified that the defendant may not see himself as
responsible for an act if he himself did not actually perform
the act even if he helped in the performance of the act.
Further, Dr. Harbin testified that the defendant has a
harder time paying attention than others and a harder
time restraining himself than others. Dr. Harbin testified
that the defendant had poor social skills, very poor
judgment, would be easily distracted and would be less
focused than others. Further, the defendant has a hard
time interacting with others and finds it harder to engage
others and predict what others might do.

7. The Court finds that while this evidence was presented
by the defendant to try to mitigate his actions on the night
Ms. Kennedy was murdered, that this evidence also
demonstrates that the defendant is dangerous. Dr. Harbin
acknowledge [sic] on cross-examination that all of the
mental health issues he identified in the defendant, taken
as a whole, could make him dangerous.

8. The Court finds that the defendant was an instrumental
part of Ms. Kennedy’s murder. She died from carbon
monoxide poisoning from inhaling carbon monoxide while
in the trunk of her car when her car was on fire. According
to witness testimony at the trial, the defendant provided

 - 11 -
 STATE V. SIMS

 Opinion of the Court

 the lighter that Chris Bell used to light the jacket on fire
 that was thrown in Ms. Kennedy’s car and eventually
 caused her death.

 9. The Court finds that the evidence at trial clearly
 demonstrated that the defendant did numerous things to
 try to hide or destroy the evidence that would point to the
 defendant’s guilt. The most obvious part is his
 participation in killing Ms. Kennedy, the ultimate piece of
 evidence against the defendants. Additionally, this
 defendant was the one who drove the car to its isolated last
 resting place in an attempt to hide it, even asking his co-
 defendants if he had hidden it well enough. Further, he
 personally went back to the car the morning after the night
 it was set on fire to make sure Ms. Kennedy was dead.

 10. The Court finds that the physical evidence
 demonstrated not only his guilt, but specifically
 demonstrated the integral role the defendant played in Ms.
 Kennedy’s death. Fingerprints, DNA, and footwear
 impressions at the scene where Ms. Kennedy was burned
 alive in her car all matched the defendant. Most notably,
 Ms. Kennedy died in the trunk of her car, and the
 palmprint on the trunk of the car, the only print found on
 the trunk, matched the defendant.

 With regard to the trial court’s ultimate findings of fact on each of the nine

Miller factors, defendant challenges all but one (Finding of Fact No. 9) for either

failing to establish which factors were mitigating, or as contradicted by the evidence

or not supporting the conclusion that a sentence of life without parole was warranted.

We address defendant’s challenge to each ultimate finding in turn.

 A. Finding of Fact No. 1—Age

 1. Age. The Court finds that the defendant was 17 and ½
 at the time of this murder, and therefore his age is less of

 - 12 -
 STATE V. SIMS

 Opinion of the Court

 a mitigating factor that [sic] it would be were he not so close
 to the age of criminal responsibility. Further, considering
 Miller v. Alabama to be instructive as to this factor, the
 Court notes that the two defendants in Miller, Jackson and
 Miller, were 14 at the time that each committed the murder
 for which he was convicted. Defendant Jackson was
 convicted solely on a felony murder theory and his initial
 role in the murder was as a getaway driver, and he was not
 the one who shot the victim. Defendant Miller had a very
 troubled childhood which included time in foster care and
 multiple suicide attempts. Miller killed a drug dealer that
 apparently provided drugs to Miller’s mother and the
 killing occurred after a physical altercation with the victim.
 The Court finds that the defendant’s age is not a
 considerable mitigating factor in this case.

(emphasis added).

 Defendant challenges Finding of Fact No. 1 based on the assertion that

“despite his chronological age, [defendant] was actually much younger in other

respects on the offense date for this case.”

 First, it is undisputed that defendant was seventeen-and-a-half years old when

he and his two codefendants murdered Ms. Kennedy. Second, there is no indication

that the legislature, in enacting N.C.G.S. § 15A-1340.19C(a), intended for the trial

court to consider anything other than a defendant’s chronological age with regard to

this factor. Indeed, the trial court is to consider whether a defendant’s age is a

mitigating circumstance in light of all the circumstances of the offense and the

particular circumstances of the defendant. See id. In the instant case, the trial court

made a point of drawing a comparison between the ages of the defendants in Miller,

 - 13 -
 STATE V. SIMS

 Opinion of the Court

who were fourteen years old at the time of their crimes, and defendant in this case,

who was six months away from reaching the age of majority. In so doing, the trial

court properly found that age was not a considerable mitigating factor in this case.

 B. Finding of Fact No. 2—Immaturity

 2. Immaturity. The Court does not find this factor to be a
 significant mitigating factor in this case based on all the
 evidence presented. The Court notes that any juvenile by
 definition is going to be immature, but that there was no
 evidence of any specific immaturity that mitigates the
 defendant’s conduct in this case.

(emphasis added).

 Defendant contends this finding is not supported by the evidence because the

trial court ignored testimony from Dr. Harbin that defendant and his brother

frequently had no adult supervision and raised themselves, defendant was “poorly

developed,” defendant’s stress tolerance and coping skills were immature, and

defendant had the psychological maturity of an eight to ten year old.

 Contrary to defendant’s assertions, the trial court made two evidentiary

findings of fact—Nos. 6 and 7—which clearly show that it considered Dr. Harbin’s

testimony. As stated previously, defendant has not challenged the evidentiary

findings of fact and so they are binding on appeal. See In re Schiphof, 192 N.C. App.

at 700, 666 S.E.2d at 500. Instead of finding that any evidence of immaturity

mitigated defendant’s actions, the trial court weighed the evidence and found more

compelling Dr. Harbin’s acknowledgment that certain characteristics—defendant’s

 - 14 -
 STATE V. SIMS

 Opinion of the Court

“poor social skills, very poor judgment,” and difficulty “interacting with others and

find[ing] it harder to engage others and predict what they might do”—“could make

[defendant] dangerous.” It is well within the trial court’s discretion to “pass upon the

credibility of [certain] evidence and to decide what[, or how much,] weight to assign

to it.” State v. Villeda, 165 N.C. App. 431, 438, 599 S.E.2d 62, 66 (2004). Accordingly,

defendant’s argument that Finding of Fact No. 2 is not supported by the evidence is

overruled.

 C. Finding of Fact No. 3—Ability to appreciate the risks of the conduct

 3. Ability to appreciate the risks of the conduct. Dr. Harbin,
 the defendant’s psychologist, testified that in spite of the
 defendant’s diagnoses and mental health issues, the
 defendant would have known that the acts he and his co-
 defendants committed while they stole Ms. Kennedy’s car,
 kidnapped her, and ultimately murdered her were wrong.

 Defendant contends the trial court misapprehended the nature of this finding

under section 15A-1340.19B(c)(3) because the question of whether defendant knew

an act was wrong is part of the test for the defense of insanity.

 In the trial court’s unchallenged evidentiary Findings of Fact Nos. 5 and 9, the

trial court found that defendant knew right from wrong as evidenced by the fact that

defendant did numerous acts to attempt to hide or destroy evidence which would

inculpate him in the killing of Ms. Kennedy, including the act of her murder itself,

driving the vehicle to its last resting place, asking his codefendants if he hid the

vehicle well enough, and personally checking to confirm that Ms. Kennedy was dead.

 - 15 -
 STATE V. SIMS

 Opinion of the Court

By arguing that Dr. Harbin testified that defendant’s intellectual abilities were

deficient and that he had poor judgment, defendant essentially requests that this

Court reweigh the evidence which the trial court was not required to find compelling.

See State v. Golphin, 352 N.C. 364, 484, 533 S.E.2d 168, 245 (2000) (“The evidence

presented by [the defendant’s] mental health expert was not so manifestly credible

that . . . [the fact finder] was required to find it convincing.”). Accordingly, the trial

court did not misapprehend the nature of the factor in section 15A-1340.19B(c)(3) on

whether defendant had the ability to appreciate the risks or consequences of his

conduct, and this argument is overruled.

 D. Finding of Fact No. 4—Intellectual Capacity

 4. Intellectual Capacity. The Court finds that the
 defendant’s intellectual capacity was below normal.
 Nevertheless, the Court finds that at the time of Ms.
 Kennedy’s murder, the defendant was able to drive a car,
 to work at Hardee’s, to be sophisticated enough to try to
 hide evidence in multiple ways at multiple places, and to
 work with his co-defendants to hide evidence and to try to
 hide Ms. Kennedy’s car so it would not be found.

 Defendant challenges this finding as “violat[ing] the statutory mandate

requiring findings of the absence or presence of mitigating factors.” However, the

trial court’s use of the word “nevertheless” demonstrates that it did not consider this

factor to be a mitigating one. In other words, Finding of Fact No. 4 can be read to say

that while defendant’s intellectual capacity was below normal, it was not a mitigating

factor in light of other evidence (defendant’s ability to drive a car, work at Hardee’s,

 - 16 -
 STATE V. SIMS

 Opinion of the Court

etc.). As such, this finding does not “violate the statutory mandate,” and this

argument is overruled.

 E. Finding of Fact No. 5—Prior Record

 5. Prior Record. The defendant’s formal criminal record as
 found on the defendant’s prior record level worksheet was
 for possession of drug paraphernalia. However, the Court
 notes that because the defendant was 17 ½, he had only
 been an adult for criminal purposes in North Carolina
 courts for a short period of time. The Court considers the
 defendant’s Armed Robbery juvenile situation in Florida
 and the defendant’s removal from high school for stealing
 as probative evidence in this case, specifically because both
 occurrences occurred when the defendant was with others,
 and the defendant denied culpability in Ms. Kennedy’s
 murder and the other two incidents. The Court does not
 find this to be a compelling mitigating factor for the
 defendant.

(emphasis added).

 Defendant argues the trial court misapprehended this factor because it

considered an armed robbery charge from Florida and defendant’s expulsion from

high school for stealing. He contends this mitigating factor only encompasses a

defendant’s formal criminal record, which showed a single conviction for possession

of drug paraphernalia.

 First, the statute at issue, N.C.G.S. § 15A-1340.19B, does not define the term

“prior record.” See id. § 15A-1340.19B(c). Second, in its unchallenged evidentiary

Finding of Fact No. 4, the trial court found, in relevant part, as follows with regard

to defendant’s prior record:

 - 17 -
 STATE V. SIMS

 Opinion of the Court

 [T]he Court reviewed materials and heard evidence that as
 a juvenile in Florida, the defendant had been charged with
 armed robbery but denied any culpability in the case. Also,
 this Court heard and reviewed evidence that the defendant
 was removed from Hobbton High School in September 1998
 in large part due to bad behavior. Specifically, the Court
 notes that the defendant was accused, along with two
 others, of stealing from the boy’s locker room after school
 as a part of a group, but again denied doing anything
 wrong. The school specifically found that [defendant’s] acts
 during this theft were not due to his learning disabilities.
 This Court notes in all three incidents, the Florida armed
 robbery, the Hobbton high school theft, and the murder of
 Ms. Kennedy, the defendant was with a group of people,
 and in the light most favorable to him, was at a minimum
 a criminally culpable member of the group but was
 unwilling to admit to any personal wrongdoing.

(footnote omitted). Further, in a footnote to unchallenged evidentiary Finding of Fact

No. 4, the trial court stated as follows:

 According to the defendant’s evidence, the defendant was
 charged in juvenile court in Florida and was placed on
 juvenile probation as a result of this incident. Further, the
 defendant’s version of this incident is that after being
 placed on probation, the charges were eventually
 dismissed. This Court does not specifically consider the
 charge itself or the subsequent punishment itself as
 evidence against the defendant, but rather finds
 noteworthy the defendant’s complete denial of any
 wrongdoing while involved in criminal activity as part of a
 group. The Court notes the similarity to that incident and
 this incident, in which the defendant, while part of a group,
 committed acts that a Court deemed worthy of
 punishment, but for which the defendant denied
 wrongdoing.

 By making clear that it was not “specifically consider[ing] the charge itself,”

 - 18 -
 STATE V. SIMS

 Opinion of the Court

the trial court nevertheless did not misapprehend the nature of this mitigating factor

as there is no prohibition, statutory or otherwise, on a trial court taking into

consideration school records which indicate a defendant has previously engaged in

criminal activity simply because such evidence is not a part of a defendant’s “formal

criminal record.” Indeed, evidence of defendant’s conviction for possession of drug

paraphernalia, followed by theft, followed by the murder of Ms. Kennedy shows the

escalation of defendant’s criminal activity, which is an appropriate consideration for

the trial court. See Lovette, 233 N.C. App. at 722, 758 S.E.2d at 410 (finding no error

in the trial court’s conclusion to sentence the defendant to life imprisonment without

parole where, inter alia, the defendant’s “criminal activity had continued to

escalate”). Defendant’s argument is overruled.

 F. Finding of Fact No. 6—Mental Health

 6. Mental Health. Dr. Harbin testified both at trial and at
 the February 20, 2014 evidentiary hearing that he
 diagnosed the defendant with ADHD and a Personality
 Disorder Not Otherwise Specified. The Court finds that
 although the defendant did have mental health issues
 around the time of the murder, they do not rise to the level
 to provide much mitigation. Many people have ADHD, and
 a non-specified personality disorder is not an unusual
 diagnosis. Many people function fine in society with these
 issues.

(emphasis added).

 Defendant challenges this finding as failing to provide a clear indication of

whether it was mitigating or not, depriving this Court of the ability to effectively

 - 19 -
 STATE V. SIMS

 Opinion of the Court

review the sentencing order. Contrary to defendant’s assertion, the trial court clearly

stated in Finding of Fact No. 6 that it found “that although the defendant did have

mental health issues around the time of the murder, they do not rise to the level to

provide much mitigation.” In other words, the trial court did not find defendant’s

mental health at the time to be a mitigating factor. Defendant’s argument is

overruled.

 G. Finding of Fact No. 7—Familiar or Peer Pressure exerted on the defendant

 7. Familiar of Peer Pressure exerted on the defendant.
 A. The Court finds there was no familial pressure
 exerted on the defendant to commit this crime. In fact,
 the opposite is true. Sophia Strickland, [defendant’s]
 mother, testified both at the trial and at the February
 20, 2014 evidentiary hearing that she had warned
 [defendant] repeatedly to stay away from the co-
 defendant’s [sic] in this case. Specifically, Ms. Strickland
 stated at the evidentiary hearing that if [defendant]
 continued to hang out with his co-defendants, something
 bad was going to happen. Further, [defendant’s] sister,
 Tashia Strickland, also told [defendant] that she did not
 like the co-defendants, that the co-defendants were not
 welcome at her residence, and that [defendant] should
 not hang out with them. Also, Vicki Krch, [defendant’s]
 Hardee’s manager, who tried to help [defendant] when
 she could, sometimes gave [defendant] a free ride to
 work, bought [defendant] a coat, and fed [defendant’s]
 younger brother for free, warned [defendant] not to hang
 out with the co-defendants, one of whom had worked for
 her and she knew well. The Court finds that the
 defendant refused to listen to his family members’
 warnings to stay away from the co-defendants.
 B. Peer Pressure. There was no evidence in this case that
 [defendant] was threatened or coerced to do any of the
 things he did during the kidnapping, assault, murder,

 - 20 -
 STATE V. SIMS

 Opinion of the Court

 and burning of Ms. Kennedy’s car. At trial, co-defendant
 Chad Williams stated that when Chris Bell first brought
 up the idea of stealing the car, [defendant] stated “I’m
 down for whatever.” The only evidence that may fit in
 this category is Dr. Harbin’s testimony that the
 defendant could be easily influenced. Nevertheless, the
 defendant made a choice to be with his co-defendants
 during Ms. Kennedy’s murder, and actively participated
 in it. The evidence demonstrated that the defendant was
 apparently only easily influenced by his friends, but not
 his family who consistently told him to avoid the co-
 defendants. This demonstrates that the defendant made
 choices as to whom he would listen.

(footnote omitted).

 Defendant argues that both parts of this finding demonstrate that the trial

court misapprehended the “peer pressure” mitigating factor. He contends there is no

requirement that a defendant demonstrate actual threats or coercion to prove he was

subject to peer pressure and that his refusal to listen to his mother after he started

hanging out with his codefendant, Bell, was consistent with the existence of peer

pressure.

 Reading Finding of Fact No. 7 as a whole, it shows that the trial court found

that there was little or no pressure exerted by defendant’s codefendants to participate

in these crimes. The trial court found that when Bell brought up the idea of stealing

a vehicle, defendant stated, “I’m down for whatever.” It further found that the only

evidence that could possibly relate to defendant’s susceptibility to familial or peer

pressure was Dr. Harbin’s testimony that defendant could be easily influenced.

 - 21 -
 STATE V. SIMS

 Opinion of the Court

However, the trial court nevertheless found that defendant made a deliberate choice

to be with his codefendants and “actively participated” in the murder, even that he

played an “integral role” in the crime. As for defendant’s contention that his refusal

to listen to his family members’ warnings to stay away from his codefendants is

evidence that he was subject to peer pressure, that contention is not supported by the

trial court’s findings. The trial court found, rather, that this was evidence that he

was “apparently only easily influenced by his friends, but not his family . . . [which]

demonstrates that [he] made choices as to whom he would listen.” Defendant’s

argument is overruled.

 H. Finding of Fact No. 8—Likelihood the defendant would benefit from
 rehabilitation in confinement

 8. Likelihood the defendant would benefit from
 rehabilitation in confinement. The defendant’s prison
 records demonstrate that the defendant has been charged
 and found responsible for well over 20 infractions while in
 prison. He consistently refused many efforts to obtain
 substance abuse treatment. While the defendant has in
 fact obtained his GED which the court finds is an
 important step towards rehabilitation, the Court notes that
 the defendant during the first ten years plus of his
 confinement often refused multiple case managers [sic]
 pleas to obtain his G.E.D. According to prison records
 submitted into evidence during the February 20, 2014
 evidentiary hearing, the Court notes that during a 2009
 meeting with a psychiatrist the defendant noted that he
 was depressed in part because he was in prison and should
 not be. The Court finds that throughout the defendant’s life
 he did not adjust well to whatever environment he was in.
 The Court finds that in recent years, the defendant has
 seemed to do somewhat better in prison, which includes

 - 22 -
 STATE V. SIMS

 Opinion of the Court

 being moved to medium custody. Most importantly to this
 Court, the evidence demonstrates that in prison, the
 defendant is in a rigid, structured environment, which best
 serves to help him with his mental health issues, and
 serves to protect the public from the defendant, who on
 multiple occasions in non-structured environments
 committed unlawful acts when in the company of others.

(footnote omitted).

 Defendant argues that in making Finding of Fact No. 8, the trial court

improperly used his improvement while in prison against him. Contrary to

defendant’s assertion, Finding of Fact No. 8 indicates that defendant has not

benefitted a great deal from rehabilitation during his confinement, which is

supported by the trial court’s unchallenged evidentiary Finding of Fact No. 3: “The

Court finds that the defendant has not been a model prisoner . . . . His prison records

indicate that he has committed and been found responsible for well over 20

infractions since he has been in prison.” While the trial court did note that defendant

“seemed to do somewhat better in prison” in recent years, it also noted that

defendant’s own expert testified that his mental health issues made him dangerous

and that he would do best in a rigid, structured environment like prison. Accordingly,

the trial court’s Finding of Fact No. 8 was supported by the evidence and not used

improperly against defendant. This argument is overruled.

 While Miller states that life without parole would be an uncommon

punishment for juvenile offenders, the trial court has apparently determined that

 - 23 -
 STATE V. SIMS

 Opinion of the Court

defendant is one of those “rare juvenile offenders” for whom it is appropriate. See

Miller, 567 U.S. at 479, 183 L. Ed. 2d at 424. The trial court’s unchallenged

evidentiary findings combined with its ultimate findings regarding the Miller factors

demonstrate that the trial court’s determination was the result of a reasoned

decision.4 Therefore, the trial court did not abuse its discretion in weighing the Miller

factors to determine defendant’s sentence.

 NO ERROR.

 Judge CALABRIA concurs.

 Judge STROUD concurs in the result only by separate opinion.

 4 Following the Miller ruling, many courts adopted their own interpretation of Miller’s
application to current legislation and state practices, as it varies by jurisdictions. More recently, in
Malvo v. Mathena, 893 F. 3d 265, 274 (4th Cir. 2018), aff’d, Malvo v. Mathena, 254 F. Supp. 3d 820
(E.D. Va. 2017), the Fourth Circuit’s opinion defined Miller to prohibit “impos[ing] a discretionary life
[] without [] parole sentence on a juvenile homicide offender without first concluding that the offender’s
‘crimes reflect permanent incorrigibility,’ as distinct from the ‘transient immaturity of youth.’ ” Id.
(quoting Montgomery, 577 U.S. at ____, 193 L. Ed. 2d at 620) (emphasis added)).
 We rely on our precedent–which Montgomery reiterates–that sentencing judges may consider
Miller factors but are not required by law to issue an ultimate finding or conclusion. See Lovette, 233
N.C. App. at 719, 758 S.E.2d at 408 (“The findings of fact must support the trial court’s conclusion that
defendant should be sentenced to life imprisonment without parole, and a finding of ‘irreparable
corruption’ is not required.”); see also Montgomery, 577 U.S. at ____, 193 L. Ed. 2d at 621 (“Miller [does]
not require trial courts to make a finding of fact regarding a child’s incorrigibility. . . this Court is
careful [not] to limit the scope of any attendant procedural requirement to avoid intruding more than
necessary upon the States’ sovereign administration of their criminal justice systems.”). We reject the
contention that the trial court was erroneous because it did not issue a finding regarding permanent
incorrigibility.

 - 24 -
No. COA17-45 – State v. Sims

STROUD, Judge, concurring.

 I concur in the result only, reluctantly, because prior precedent of this Court

requires it.

 Our trial courts and this Court have struggled with the proper application of

the Miller factors in first degree murder convictions of defendants under 18 at the

time of the crime. See generally Miller v. Alabama, 567 U.S. 460, 183 L. Ed. 2d 407

(2012). The application of the Miller factors is a discretionary ruling and has no hard

and fast rules, nor should it. See generally id. But the United States Supreme Court’s

ruling in Montgomery v. Louisiana establishes that the trial court must be able to

find that the defendant is “permanent[ly] incorrigibl[e]” or “irreparab[ly] corrupt[]”

before sentencing him to life imprisonment without the possibility of parole. 577 U.S.

___, ___, 193 L. Ed. 2d 599, 611-20 (2016). “Permanent” means forever. “Irreparable”

means beyond improvement. In other words, the trial court should be satisfied that

in 25 years, in 35 years, in 55 years –- when the defendant may be in his seventies or

eighties -- he will likely still remain incorrigible or corrupt, just as he was as a

teenager, so that even then parole is not appropriate. That is a very high standard,

which is why the Supreme Court stated that life imprisonment without the possibility

of parole should be “rare[.]” Id. at ___, 193 L.E. 2d at 611.

 If our courts consistently interpret evidence of each factor as “not mitigating”

no matter what the evidence is -- and they are free to do so, as I noted in my

concurring opinion in State v. May, ___ N.C. App. ___, 804 S.E.2d 584 (2017) -- defense
 STATE V. MAY

 STROUD, J., concurrence

attorneys will have no way of knowing what sort of evidence to present in mitigation.

For example, a low IQ can be seen as mitigating, since it lessens the defendant’s

culpability; it can also be seen as not mitigating, because the defendant may be less

able to take advantage of programs in prison which may improve him, such as

obtaining a GED. Here, the trial court even noted in finding of fact seven that

although defendant presented certain evidence intended as mitigating evidence, it

found the evidence to be the opposite. Defense attorneys may damage a defendant’s

case when trying to help it, since any evidence they use can be turned against them.

But the trial court’s opinion addressed each factor as required by North Carolina

General Statute § 15A-1340.19B, and though I agree with defendant that the trial

court focused more on whether he is “dangerous” than permanently incorrigible or

irreparably corrupt, under North Carolina’s case law, that is within its discretion.

 I therefore concur in result only.

 2